In re the Matter of Cody Christian EMIG, by and through his next friend, Gary Bryan EMIG, and Gary Bryan Emig, Individually, Appellants,

v.

Amy Nicole CURTIS, Respondent.

No. WD 61848.

Missouri Court of Appeals,
Western District.

Oct. 14, 2003.

Brent F. Teichman, Lexington, for appellant.

Amy N. Curtis, Blue Springs, pro se.

Before PAUL M. SPINDEN, P.J., THOMAS H. NEWTON and RONALD R. HOLLIGER, JJ.

THOMAS H. NEWTON, Judge.

Motions to modify child custody and child support were filed by Ms. Amy Nicole Curtis and Mr. Gary Bryan Emig. The motion court ordered that the parties have joint legal and physical custody of their son, Cody Christian Emig, with Mr. Emig having custody of Cody for a greater amount of time. Also, Mr. Emig was ordered to pay Ms. Curtis child support. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Cody Christian Emig was born to Mr. Emig and Ms. Curtis on April 30, 1994. On May 15, 2000, the trial court entered a Judgment of Paternity, Custody, Visitation and Support, declaring Mr. Emig to be the natural and biological father of Cody. Ms. Curtis and Mr. Emig were awarded joint legal and physical custody of Cody. No child support was awarded to either party because the trial court found that the presumed child support amount of $77 a month to be paid by Mr. Emig to Ms. Curtis was unjust and inappropriate because the parties spent an equal amount of time with Cody.

On August 27, 2001, Ms. Curtis filed with the motion court a Motion to Modify requesting primary physical custody of Cody and child support from Mr. Emig based on Form 14[1] and pursuant to Rule 88.01. Mr. Emig filed a Crossmotion to Modify and sought primary physical custody of Cody but did not seek child support. At the hearing, Ms. Curtis' Form 14 was admitted into evidence without objection.

The motion court awarded greater custodial time with Cody to Mr. Emig, with the parties retaining joint legal and physical custody. Based on the parenting plan adopted by the motion court, Mr. Emig has custody of Cody about fifty nine percent of the time and Ms. Curtis has custody of Cody about forty one percent of the time. The motion court also adopted Ms. Curtis' Form 14[2] and ordered Mr. Emig to pay Ms. Curtis $346 a month in child support.

Mr. Emig appeals the award of child support to Ms. Curtis, and that is the only point on appeal. He contends that the motion court abused its discretion by failing to properly take into account the relevant factors of section 452.340[3] to rebut the presumed child support amount (PCSA). He claims that the motion court erred in ordering him, as the primary custodial parent, to pay child support to Ms. Curtis based on Ms. Curtis' Form 14, which anticipated that she would be designated the primary physical custodian of Cody.

## II. COMPLIANCE WITH RULE 84.04

As a preliminary matter, we must address Mr. Emig's motion to strike Ms. Curtis' brief for failure to comply with Rule 84.04. Although Ms. Curtis is appearing *pro se* in this appeal, she is still held to the same standard as a licensed attorney and, therefore, must comply with the requirements of Rule 84.04. *Kittle v. Kittle*, 31 S.W.3d 127, 129 (Mo.App. S.D. 2000); *Speight v. Speight*, 933 S.W.2d 879, 881 (Mo.App. W.D.1996). Substantial compliance with Rule 84.04 is mandatory. *Gray v. White*, 26 S.W.3d 806, 815 (Mo. App. E.D.1999).

This court has discretion to dismiss an appeal for failure to comply with Rule 84.04, but we also have discretion in the interest of justice to review an appeal on the merits even when the brief is not entirely compliant with the rule. *Id.* at 816. Because rules of civil procedure are to be liberally construed, we hesitate to dismiss a case on purely technical grounds. *Id.* at 815. "We will not exercise our discretion to dismiss an appeal for technical deficiency under Rule 84.04 unless the deficiency impedes disposition on the merits." *Id.* at 816.

Motions to strike appellate briefs for failure to comply with Rule 84.04 are generally brought by the respondent for alleged deficiencies in the appellant's brief. In this case, however, Mr. Emig, the appellant, is bringing this motion to strike Ms. Curtis' brief. Respondents are not required to file briefs, although it is preferred in the interests of fair adjudication of both parties' claims. *In re Estate of Klaas*, 8 S.W.3d 906, 908 (Mo.App. S.D. 2000). We could, therefore, determine this appeal on the merits even if we granted Mr. Emig's motion to strike Ms. Curtis'

---

**1.** All Rule and Form citations are to Missouri Rules of Civil Procedure (2003) unless otherwise noted.

**2.** Mr. Emig did not offer an alternative Form 14.

**3.** Unless otherwise indicated, all statutory references are to RSMo.2000.

brief. But because Ms. Curtis has filed a brief, she must comply with the rules. While there are some technical deficiencies in her brief, however, Ms. Curtis' brief does substantially comply with Rule 84.04 and, taken with Mr. Emig's brief, her arguments are clear responses to Mr. Emig's arguments. *See Geiersbach v. Blue Cross/ Blue Shield of Kansas City*, 58 S.W.3d 636, 638–39 (Mo.App. W.D.2001) (not dismissing the appeal for violating Rule 84.04 because although appellant's brief provided little assistance in determining the issues on appeal, the single issue was ascertainable based on respondent's brief and the legal file). Since there is no substantial violation of Rule 84.04, Mr. Emig's motion to strike Ms. Curtis' brief is denied.

### III. STANDARD OF REVIEW

Our review of this point requires us to apply the *Murphy v. Carron* standard, 536 S.W.2d 30, 32 (Mo. banc 1976), and an abuse of discretion standard. In reviewing an award of child support, we review the award, in light of the trial court's application of the two-step procedure described in the opinion, to determine whether it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Conrad v. Conrad*, 76 S.W.3d 305, 308 (Mo.App. W.D.2002). "After reviewing and determining that the trial court's application of the [two-step] procedure passes the *Murphy v. Carron* standard, we then review for an abuse of discretion with respect to the trial court's rebuttal review of its PCSA calculation." *Id.*

### IV. LEGAL ANALYSIS

**The motion court abused its discretion when it failed to rebut the presumed child support amount calculated on Ms. Curtis' Form 14.**

 When the motion court determines child support in any proceeding,

Rule 88.01 and section 452.340 require the court to follow a two-step procedure. *Conrad*, 76 S.W.3d at 308. First, the motion court is required to determine and find for the record the PCSA based on Form 14. *Id.* The second step requires the motion court to consider all relevant factors and determine whether the PCSA should be rebutted as unjust or inappropriate. *Id.* When calculating the PCSA, the motion court can either accept a Form 14 offered by one of the parties or it may reject both Form 14 calculations and do its own. *Ricklefs v. Ricklefs*, 39 S.W.3d 865, 870 (Mo.App. W.D.2001). If any item is incorrect on a submitted Form 14, the motion court must reject the form and do its own calculations. *Id.* Section 452.340.1 lists relevant factors to be considered in the second step, providing in pertinent part:

1. In a proceeding for dissolution of marriage, legal separation or child support, the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable or necessary for the support of the child, including an award retroactive to the date of filing the petition, without regard to marital misconduct, after considering all relevant factors including:

> (1) The financial needs and resources of the child;

> (2) The financial resources and needs of the parents;

> (3) The standard of living the child would have enjoyed had the marriage not been dissolved;

> The physical and emotional condition of the child, and the child's educational needs;

> (5) The child's physical and legal custody arrangements, including the

amount of time the child spends with each parent and the reasonable expenses associated with the custody or visitation arrangements; and

(6) The reasonable work-related child care expenses of each parent.

(emphasis added).

The use of Form 14 is mandatory to determine the presumed child support award. *Tuning v. Tuning*, 841 S.W.2d 264, 266–67 (Mo.App. S.D.1992). While the directions for use of the Form 14 say both parties shall complete a Form 14, if the parties agree upon the amounts in the form, only one form need be submitted. *Id.* at 267. At the hearing, Mr. Emig stated that he agreed with Ms. Curtis' Form 14, that his income was listed correctly, and that if the numbers were "flip-flopped," he would receive $206 a month in support from Ms. Curtis. "One party's failure to file a Form 14 . . . acknowledges agreement with the Form 14 filed by the other spouse." *Allen v. Allen*, 961 S.W.2d 891, 894 (Mo.App. W.D.1998). Mr. Emig is not challenging the child support award as determined on Ms. Curtis' Form 14.[4] Mr. Emig asserts that the motion court failed

to rebut that amount. Because he is disputing only the failure to deviate from the PCSA, not the PCSA itself, he has not waived an appeal on this issue. *See id.* ("Because Husband disputes the trial court's deviation from the presumed child support amount, he did not waive the issue on appeal by failing to file a Form 14.")

The parties in this case have joint legal and physical custody of Cody. Child support may be awarded even when the parents have been given that custodial arrangement. *Stewart v. Stewart*, 988 S.W.2d 622, 625 (Mo.App. W.D.1999). "Joint physical custody does not require an equal amount of time with each parent." *Id.* at 624. But this case is somewhat unusual in that while Cody's primary residence[5] is with Mr. Emig—he is with his father fifty-nine percent of the time or approximately 215 overnight periods—Mr. Emig was also ordered to pay child support to Ms. Curtis.[6] Mr. Emig agrees with the Form 14 but disagrees that he should be obligated to pay child support to Ms. Curtis at all since he has custody of Cody the majority of the time. "A deviation from the presumed child support

---

4. Since the Form 14 was not challenged, we cannot review the calculation of the PCSA. However, it appears to us the calculation is incorrect because Ms. Curtis' income was wrong, Mr. Emig did not receive health insurance credit, and Mr. Emig was given the wrong credit for overnight visitation.

5. Although both the motion court and the parties have referred to "primary residence" or "primary physical custody," the word "primary" is a misnomer, as we explained recently in *Loumiet v. Loumiet*, 103 S.W.3d 332, 338 (Mo.App. W.D.2003). The motion court can award joint physical custody or sole physical custody, but section 452.375.1(1) makes no mention of primary physical custody, or primary residence. *See Id.* at 336–38. Because the trial court awarded joint legal and physical custody, we discern that the motion court used the word "primary" to denote that al-

though the court was awarding joint physical custody, Mr. Emig would have a greater share of Cody's physical custody than Ms. Curtis.

6. In most cases where the parents have a similar custody allocation and child support is awarded, it is the parent with less total overnight visitation who is ordered to pay child support. *See e.g. Stewart*, 988 S.W.2d at 624, 627 (Mr. Stewart has the children approximately six days every two weeks and must pay child support for the greater time the children will be with Ms. Stewart); *Hoffman v. Hoffman*, 870 S.W.2d 480, 482–83 (Mo.App. E.D.1994) (holding that trial court properly determined child support owed by father when children reside with him thirty six percent of the time). But this does not preclude a trial court from determining that the circumstances warrant giving the parent with less visitation child support.

amount may be appropriate when an award of custody, including, but not limited to, an award of joint physical custody, results in the child or children spending substantially equal time with both parents." DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM No. 14, Line 12, *COMMENT A*. While it may be reasonable for Mr. Emig to pay child support to Ms. Curtis, even if he has Cody for a greater amount of time, the motion court abused its discretion by not fully considering the factors contained in section 452.340 in determining the amount. Specifically, the motion court should have considered factor five under section 452.340.1, "the amount of time the child spends with each parent and the reasonable expenses associated with the custody or visitation arrangements." Since Mr. Emig has Cody for more time than Ms. Curtis, and there were no other unusual expenses Ms. Curtis would have to incur, the child support amount should have been rebutted as being unjust or inappropriate.

On remand, the motion court needs to reconsider the issue of child support, including whether to recalculate the PCSA, to have no child support, to require Ms. Curtis to pay child support, or to require Mr. Emig to pay child support but at a reduced amount. We are not saying the parent with greater custodial time cannot ever be required to pay child support, nor what amount either parent should pay, merely that in these circumstances it was inappropriate not to deviate, at least partially, from the PCSA.

The motion court must consider all the relevant factors, including those listed in section 452.340, to decide whether the PCSA should be rebutted. The instructions for the PCSA on Line 12 require that, in determining an appropriate deviation from the PCSA, the court "shall consider which parent is likely to pay the expenses of the child ... that are unaffected by the amount of time spent with each parent, e.g. clothing, activity fees, school and books." DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM No. 14, Line 12, *COMMENT A*. Here, Mr. Emig has Cody the majority of the time during the school year. This means that Mr. Emig will probably be the parent who will purchase school clothes, pay activity fees, and buy schoolbooks. Hence, the motion court should consider the expenses Mr. Emig will incur due to his greater custody allocation.

Further, when determining whether child support should be awarded, "[t]he mere expenditure of substantial time with both parents does not by itself eliminate the need for support to be paid by one parent to the other; rather, the expenditure of substantial time with both parents is merely a factor to be considered in determining whether the presumed child support amount is unjust or inappropriate." *Id.* Although Mr. Emig has Cody for more overnight periods, Ms. Curtis has Cody for the majority of time in the summer. So it is fair to say that Ms. Curtis has Cody more during daytime hours. *See In re Marriage of Gore*, 781 S.W.2d 828, 830 (Mo.App. S.D.1989) (rejecting Husband's claim each parent has equal actual custody of the children because, while he has physical custody a substantial percentage of the time, during the summer vacation the children will be with Wife most of the daytime hours). This situation may justify requiring Mr. Emig to make child support payments to Ms. Curtis, if the evidence shows that she will have additional expenses due to having Cody more during the summer. When awarding child support, the court cannot ignore "the realities of how the expenses are likely to fall on the respective parents." *Stewart*, 988 S.W.2d at 626. The only evidence present-

ly in the record about expenses relates to Ms. Curtis' past expenses, which is insufficient to support the motion court's decision to not rebut the PCSA. It may be appropriate to consider additional evidence about Ms. Curtis' future expenses, since she will have Cody in the summer, in determining how much to deviate from the PCSA.

The motion court may also wish to consider the cases of *Leone v. Leone* and *Stewart* in deciding how child support should be allocated. In *Leone,* the mother had the children most of the time during the school year and the father had the children most of the time during the summer. 917 S.W.2d 608, 612 (Mo.App. W.D. 1996). The trial court ordered the father to pay child support to the mother during the school year but did not order the mother to pay any child support during the summer, although the parties had similar incomes. *Id.* On appeal, this court determined that the award of support to the mother was appropriate but the failure to order support paid to the father was an abuse of discretion. *Id.* This court then recalculated the amount of child support that should be owed. The court accepted the amount the trial court ordered the father pay to the mother as the amount the father owed. The court then determined the amount the mother should pay to the father during the summer months, based on Form 14. The court netted those amounts out, that net amount being the amount the father should pay to the mother. That net figure was divided into twelve equal monthly payments that the father was obligated to pay the mother. *Id.* at 612–13.

In *Stewart,* Mr. Stewart had the children six out of every fourteen days. 988 S.W.2d at 626. The trial court ordered Mr. Stewart to pay approximately half of the PCSA, but did not order Mrs. Stewart to pay any child support, although the parents had virtually identical incomes. *Id.* at 627. This court, relying on *Leone,* concluded that based on the custody allocation the trial court abused its discretion in ordering Mr. Stewart to pay that amount of child support to Mrs. Stewart. *Id.* We then held that the amount of child support Mr. Stewart paid should be an amount that corresponded with the greater time the children were in the care of Mrs. Stewart. *Id.*

Our case is very similar to *Leone,* only Mr. Emig has Cody more during the school year and Ms. Curtis has Cody more during the summer. Although Mr. Emig did not request any child support from Ms. Curtis, the motion court may consider using a formula similar to that in *Leone* when determining who should pay child support and how much they should pay. This case presents a clearer situation than *Stewart* because, while Mr. Stewart had the children only six out of every fourteen days, Mr. Emig has Cody fifty nine percent of the year. Therefore, the motion court should have rebutted the PCSA derived from Ms. Curtis' Form 14. However, Mr. Emig and Ms. Curtis have a greater difference in their incomes than the parties in *Leone* and *Stewart,* and Ms. Curtis will have Cody more during summer. Those factors should be considered when deciding how much to rebut the PCSA. *Cf. Gatton v. Gatton,* 35 S.W.3d 930, 931 (Mo.App. W.D.2001) (distinguishing *Stewart* because the parties did not have similar incomes).

## V. CONCLUSION

Here, the motion court abused its discretion in not rebutting the Form 14 PCSA. This court will set aside a judgment on the basis that it is against the weight of the evidence only with caution and with a firm belief that the motion court's judg-

ment is wrong. *Word v. Peterson*, 57 S.W.3d 894, 900 (Mo.App. W.D.2001). In this case, we have a firm belief that the motion court's failure to rebut the PCSA was against the weight of the evidence adduced at the hearing and that the motion court's judgment was wrong. Mr. Emig's point is granted and the motion court's judgment is reversed and the case is remanded to the motion court. On remand, the motion court should consider all of the factors in section 452.340, particularly the amount of time that Cody spends with each parent and the expenses each parent will incur to determine the appropriate deviation from the PCSA.

PAUL M. SPINDEN, P.J., and RONALD R. HOLLIGER, J. concur.